**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LASHAWN D. FITCH,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>VICTORIA L. KUHN *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 22-5884 (MAS) (RLS)<br><br>**OPINION** |

**SHIPP, District Judge**

　　This matter comes before the Court on the Court's *sua sponte* screening of Plaintiff Lashawn D. Fitch's Complaint (ECF No. 1) and application to proceed *in forma pauperis* (ECF No. 1-1). Having reviewed the application, this Court finds that Plaintiff has shown his entitlement to proceed without prepayment of fees, and he shall therefore be granted *in forma pauperis* status. As Plaintiff shall be granted *in forma pauperis* status in this matter, the Court is required to screen his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismiss any claim which is frivolous, malicious, fails to state a claim for relief, or seeks relief from an immune defendant. For the reasons set forth below, the Court dismisses Plaintiff's complaint without prejudice.

**I.　　BACKGROUND**

　　Plaintiff is a convicted state prisoner currently confined in New Jersey State Prison. (ECF No. 1 at 4.) Plaintiff's Complaint takes issue with the COVID-19 protocols and practices in place at the prison between December 2021 and January 2022, during which period the prison suffered from a large rise in the number of positive cases. (*Id.*) As Plaintiff himself notes, however, the

New Jersey State Prison system, including New Jersey State Prison, took substantial steps to mitigate the risks posed by the virus. The steps included testing inmates and staff for COVID-19, quarantining infected inmates, limitations on movements within the prison and access to certain shared areas, the provision of masks to inmates and staff, and the implementation of various federally-recommended practices. (*Id.* at 6-10.) Although the prison system did relax some rules during late 2021, significant protections—including temperature checks, testing, and quarantining—remained in place, although guards were apparently permitted to choose whether or not they would wear masks. (*Id.*)

In December 2021, the prison suffered a large increase in the number of COVID-19 cases among both prisoners and guards, with many of the guards suffering infection following a holiday party. (*Id.* at 9-10.) Following this increase, many of the units in the prison were placed on lockdown and a significant number of inmates were quarantined following positive test results. (*Id.* at 9-12.) Although Plaintiff's housing unit was not initially quarantined, it was subjected to limitations on recreation, law library use, and other services requiring movement outside of the unit. (*Id.* at 10.) Prisoners in Plaintiff's unit continued sharing certain facilities, however, such as showers, kiosks, and phones. (*Id.*) Prisoners also worked together in relatively close quarters to clean the unit. (*Id.* at 10-11.) Frequent testing continued throughout December 2021, with infected individuals being placed in quarantine. (*Id.*)

In early January, Plaintiff overheard that a large number of inmates had tested positive and that the prison intended to quarantine as if all inmates had contracted the virus. (*Id.* at 11-12.) On January 2, 2022, Plaintiff began to experience symptoms consistent with COVID-19, after which he was tested once more. (*Id.* at 12-16.) On January 7, Plaintiff was told that he had contracted COVID-19. (*Id.* at 16.) According to responses to Plaintiff's internal complaints, Plaintiff had not tested positive in his final test in late December but did test positive following testing on the

2

fourth of January. (*Id.* at 19.) Although Plaintiff blames his infection on loosened restrictions, Plaintiff does not allege that he was denied care for his COVID-19 infection, that any staff members ignored requests for treatment, or that he was otherwise mistreated in light of his infection. (*Id.* at 20-25.) Instead, Plaintiff appears to believe his rights were violated merely because he contracted COVID-19. (*Id.*)

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). While *pro se* pleadings are to be liberally construed in conducting such an analysis, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III. DISCUSSION

In his current Complaint, Plaintiff seeks to raise conditions of confinement and medical claims pursuant to 42 U.S.C. § 1983 against various supervisory officials at New Jersey State Prison and the New Jersey Department of Corrections in light of his having contracted COVID-19. In *Hope v. Warden York County Prison*, 972 F.3d 310, 330-31 (3d Cir. 2020), however, the Third Circuit clarified that the mere risk or contraction of COVID-19 does not amount to a constitutional violation. In *Hope*, the Third Circuit held that even under the Fourteenth Amendment standard applicable to detainees, which is at least as if not more protective than that applicable to convicted prisoners under the Eighth Amendment, *see Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), courts must defer to the expertise of prison officials in their responses to the risks posed by COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response." *Hope*, 972 F.3d at 325-29. Courts must not mechanically apply constitutional rules to new factual scenarios and make a constitutional violation out of good faith efforts to control unforeseen risks. *Id.* The Third Circuit thus held that where a detention facility has taken significant, concrete steps towards addressing the threat of COVID-19, the threat of the

virus in and of itself will not be sufficient to render a detainee's conditions of confinement so punitive as to create constitutional liability. *Id.* at 327-29.

The Third Circuit in *Hope* similarly found that medical claims premised on the risk of COVID-19 may only proceed where a prisoner shows that officials were deliberately indifferent to the prisoner's medical needs. *Id.* at 329; *see also Natale*, 318 F.3d at 581-82. Such a claim requires allegations which indicate that the defendants "knew of and *disregarded* an excessive risk to [the plaintiff's] health and safety." *Hope*, 972 F.3d at 329. As the Third Circuit explained, "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and in evaluating this context a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not subject to mechanical application *in unfamiliar territory*." *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where prison officials take concrete steps aimed at mitigating the threat posed by the virus, and do not otherwise refuse to treat the infected, a prisoner will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the detaining officials cannot entirely "eliminate all risk" of contracting COVID-19, notwithstanding even serious pre-existing medical conditions which may exacerbate a COVID-19 infection. *Id.* at 330-31.

In his Complaint, Plaintiff readily admits that the prison in which he is housed took significant steps at mitigating the threat and spread of COVID-19, including instituting quarantining policies, frequent testing, the provision of masks to staff and inmates, frequent cleaning, and limitations on movement throughout the facility. Although these steps did not prevent Plaintiff from contracting the virus during a large increase in cases in early 2022, that alone does not make out a constitutional claim. Indeed, although Plaintiff's Complaint reflects his

unease with the loosening of restrictions prior to the outbreak in question, the Complaint is also replete with efforts taken by the prison to attempt to control the virus. This includes the deep cleaning of Plaintiff's units, frequent and repeated testing, and the quarantining of infected prisoners and the units with infected populations too large to individually quarantine. Plaintiff thus alleges facts clearly indicating that the prison and its staff were not deliberately indifferent to his needs, but instead sought to mitigate the threat of COVID-19. As Plaintiff has not alleged any facts indicating that prison staff refused to treat him or denied him medical care after he contracted the virus, and as his Complaint fails to adequately allege that staff were deliberately indifferent to his medical needs or conditions of confinement, Plaintiff fails to plead a cognizable constitutional claim related to the prison's COVID-19 response, and his Complaint must be dismissed without prejudice.

## IV.     CONCLUSION

For the reasons expressed above, Plaintiff's *in forma pauperis* application (ECF No. 1-1) is **GRANTED**, and Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** in its entirety. Plaintiff is granted leave to file an amended complaint within thirty (30) days. An order consistent with this Opinion will be entered.

*[signature]*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE