**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LASHAWN D. FITCH,

                    Plaintiff,

                    v.

VICTORIA L. KUHN, *et al.*,

                    Defendants.

Civil Action No. 22-5884 (MAS) (RLS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on the Court's *sua sponte* screening of Plaintiff Lashawn D. Fitch's ("Plaintiff") Amended Complaint (ECF No. 8) pursuant to 28 U.S.C. § 1915(e)(2)(B). Under that statute, this Court must screen the Amended Complaint and dismiss any claim that is frivolous, malicious, or fails to state a claim upon which relief may be granted. For the following reasons, Plaintiff's Amended Complaint is dismissed without prejudice.

**I.      BACKGROUND**

    Plaintiff is a convicted state prisoner currently confined in New Jersey State Prison ("NJSP"). (Am. Compl. 3, ECF No. 8.) In his Amended Complaint, Plaintiff takes issue with the protocols and practices that were in effect to address COVID-19 at the prison between December 2021 and January 2022. During this time frame, the prison suffered from a large rise in the number of positive cases and Plaintiff contracted the virus. (*Id.* at 7-24.) As Plaintiff readily admits, however, NJSP took substantial steps to mitigate the risks posed by the virus beginning in March 2020. This included testing inmates and staff, the quarantining of infected inmates, limitations on

movements within the prison and access to certain shared areas, the provision of masks to inmates and staff, and the implementation of various federally recommended practices. (*Id.* at 6-10.) Plaintiff chiefly takes issue, however, with what he believes to have been the relaxing of some of these policies in December 2021. Most specifically, Plaintiff contends that during the period in late 2021 into January 2022, some staff members, including Defendants Craig Sears ("Sears") and Michael Crawford ("Crawford"), opted not to wear masks while on duty. (*Id.* at 7-8.) While Plaintiff was told that the mask policy became optional, Plaintiff contends that it remained the official policy of the New Jersey Department of Corrections ("NJDOC"). (*Id.*.)

Plaintiff alleges that in December 2021, the prison had a large number of positive cases of COVID-19 among staff, which Plaintiff believes spread during a staff Christmas party. (*Id.* at 8-10.) As a result of the increase in positive cases among staff and inmates, the prison closed its gymnasium and other facilities, and excluded staff members who tested positive for COVID-19 from the premises. (*Id.* at 9-10.) On December 24, 2021, two inmates in Plaintiff's prison unit tested positive and were moved to a quarantine unit. (*Id.* at 9.) When further positive cases appeared, staff made the decision to quarantine Plaintiff's entire unit, although other prisoners with positive test results were still being moved to an isolation unit after their positive tests. (*Id.*) The unit was also encouraged to work together to sanitize their cells. (*Id.* at 10.) At least some staff continued to not wear masks during this time. (*Id.*) Plaintiff contends that Defendants Sears and Crawford made the policy decisions regarding this loose quarantining of his entire housing unit. (*Id.* at 10-12.)

Starting on January 2, 2022, Plaintiff began to experience COVID-19 symptoms, leading him to ask an unspecified officer to see a nurse on January 3, 2022. (*Id.* at 12.) Nursing staff performed an additional COVID-19 test on Plaintiff the following morning. (*Id.* at 13.) Unspecified nurses heard of Plaintiff's symptoms but did not provide him with further treatment.

(*Id.*) Plaintiff thereafter experienced a loss of his sense of smell and taste, and he became paranoid about eating food prepared by others whom he feared may also have the virus. (*Id.* at 13-14.)

On January 7, 2022, Plaintiff was told by an unspecified officer that he had tested positive for COVID-19, but that he would not be transferred as his entire housing unit had been made a quarantine area. (*Id.*)  Plaintiff again saw a nurse, who heard Plaintiff's symptoms but did not provide any further medical care.[1]  Plaintiff's temperature, however, was monitored during this time. (*Id.* at 14.)

Based on these allegations, Plaintiff seeks to bring conditions of confinement and denial of medical care claims against Defendants Sears and Crawford, the supervisory officers who worked in his unit, and Defendants Victoria Kuhn ("Kuhn") and Raymond Royce ("Royce"), high level NJDOC supervisory officials who were not directly involved in his unit. (*Id.* at 3-4, 17-24.) Plaintiff does not seek to raise a claim against any of the individual nurses or prison guards with whom he interacted.

## II.    **LEGAL STANDARD**

Because Plaintiff has previously been granted *in forma pauperis* status in this matter, the Court is required to screen his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  Pursuant to the statute, the Court must *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *Id.*  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

---

[1] It is not clear from the Amended Complaint what symptoms Plaintiff believes required further treatment at that time.  (Am. Compl. 13-14.)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure[2] 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). While pro se pleadings are to be liberally construed in conducting such an analysis, pro se litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

---

[2] Any reference to a "Rule" or "Rules" hereinafter refers to the Federal Rules of Civil Procedure.

III.   **DISCUSSION**

In his Amended Complaint, Plaintiff seeks to raise conditions of confinement and medical claims pursuant to 42 U.S.C. § 1983 against various supervisory officials at NJSP and the NJDOC in light of his having contracted COVID-19.  In *Hope v. Warden York County Prison*, 972 F.3d 310, 330-31 (3d Cir. 2020), however, the Third Circuit held that the mere risk or even contraction of COVID-19 does not amount to a constitutional violation.  In *Hope*, the Third Circuit held that even under the more lenient standard applicable to pre-trial detainees, which is at least as if not more protective than that applicable to convicted prisoners such as Plaintiff under the Eighth Amendment, *see Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), courts must defer to the expertise of prison officials in their responses to the risks posed by COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response." *Hope*, 972 F.3d at 326 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979)). Courts must also refrain from mechanically applying constitutional rules to new factual scenarios and making a constitutional violation out of good faith efforts to control unforeseen risks.  *Id.* at 325-29.  The Third Circuit thus held that where a detention facility has taken significant, concrete steps towards addressing the threat of COVID-19, the threat of the virus in and of itself will not be sufficient to render a prisoner's conditions of confinement so punitive as to create constitutional liability. *Id.* at 327-29.

The Third Circuit in *Hope* also held that medical claims premised on the risk of COVID-19 may only proceed where a prisoner shows that officials were deliberately indifferent to the prisoner's medical needs. *Id.* at 329; *see also Natale*, 318 F.3d at 581-82.  Such a claim requires allegations which indicate that the defendants "knew of and *disregarded* an excessive risk to [the plaintiff's] health and safety."  *Hope*, 972 F.3d at 329.  As the Third Circuit explained, "[t]he context of the Government's conduct is essential to determine whether it shows the requisite

deliberate indifference." *Id.* at 330.  In evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not subject to mechanical application *in unfamiliar territory*." *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).  Thus, where prison officials take concrete steps aimed at mitigating the threat posed by the virus, and did not otherwise refuse to treat the infected, a prisoner will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs." *Id.* at 331.

In his Amended Complaint, Plaintiff admits that the NJDOC and its staff enacted clear policies aimed at mitigating the threat of COVID-19, including adopting quarantine and masking rules, limiting outside entrance into the facility, and limiting movement within the prison.  Plaintiff also admits that the majority of these rules remained in place throughout the time period described in his Amended Complaint.

The largest exception Plaintiff alleges is that Defendants Crawford and Sears permitted some staff to work without masks beginning in late 2021.  Plaintiff also asserts that when his unit was quarantined in its entirety the quarantine rules were not as strict as they had been previously. For example, the prisoners in the unit were still required to shower and live alongside each other. In addition, the prison decided to stop transferring positive cases out in late December 2021 or early January 2022 when it became clear that a large number of inmates including Plaintiff had tested positive.  That decision, however, was made as a practical response to a difficult situation— a burgeoning resurgence of COVID-19 cases which had previously been under control.

Although Plaintiff characterizes this limited quarantine as insufficient, he admits that even during this period the prison barred infected staff from the building, limited movement throughout the facility, actively worked to sanitize the unit, and closed access to prison-wide common areas

such as the gym and other shared facilities.  It is thus apparent that Defendants adopted clear policies to combat COVID-19.  While Sears and Crawford may have slightly relaxed or been forced to adapt those policies to the unexpected resurgence in late 2021 in Plaintiff's unit, it is clear that Defendants were taking steps to address the threat of COVID-19.  The fact that staff was permitted to decide whether to wear masks and that Plaintiff ultimately contracted the virus in spite of these policies and adaptations does not render the actions that were tailored to this situation unconstitutional.  This Court is not called upon to second guess and disregard the good faith actions of the prison to address a novel situation or to create a constitutional claim out of novel circumstances.  *Hope*, 972 F.3d at 327-31.  It is clear that Defendants adopted and made use of policies aimed at addressing COVID-19 and limiting its spread, however unsuccessful they may have been in late 2021 and early 2022.  Plaintiff, therefore, fails to state a claim for relief to the extent he contends he was subjected to unconstitutional conditions of confinement, and those claims are once again dismissed.  *Id.*

Plaintiff also alleges that Defendants were deliberately indifferent to his medical needs. The mere fact that Plaintiff contracted COVID-19 does not, by itself, make out such a claim, nor does Plaintiff have a cognizable claim simply because he suffered some symptoms.  To the contrary, Plaintiff must show that the named Defendants knew of and disregarded a serious medical issue.

Here, the steps Defendants took to create policies to address COVID-19 and limit its spread indicate that they were not indifferent to the virus itself.  Indeed, as a result of Defendants' policies, Plaintiff was frequently tested for COVID-19, his temperature was consistently monitored, and he was seen by a nurse regularly.  Plaintiff alleges that he told unspecified guard staff and a nurse that he wanted further unspecified treatment for his symptoms.  But it is unclear what treatment Plaintiff believes was warranted that was not provided.  Plaintiff does not allege any facts that

would connect a nurse's or guard's failure to provide further treatment to the named Defendants, all of whom are mid to high level supervisory officials. As a result, he has failed to plead a plausible medical claim against any of the four named Defendants. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (finding a supervisor may not be held liable under a theory of *respondeat superior* and a medical claim against a supervisor requires allegations showing personal involvement or that his actions, policies, or practices were the moving force behind the alleged violation); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). As all of Plaintiff's claims fail to state a plausible claim for relief against any of the four named Defendants, his Amended Complaint must be dismissed without prejudice.

## IV.   CONCLUSION

For the reasons expressed above, Plaintiff's Amended Complaint (ECF No. 8) is **DISMISSED WITHOUT PREJUDICE** in its entirety. Plaintiff is granted leave to file a second amended complaint in this matter within thirty (30) days. An order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE